FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Sep 07, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEREMIAH F.,[1] | No. 2:20-CV-00367-SAB |
| Plaintiff, | |
| v. | **ORDER GRANTING** |
| KILOLO KIJAKAZI, ACTING | **PLAINTIFF'S MOTION FOR** |
| COMMISSIONER OF SOCIAL | **SUMMARY JUDGMENT AND** |
| SECURITY,[2] | **DENYING DEFENDANT'S** |
| Defendant. | **MOTION FOR SUMMARY** |
| | **JUDGMENT** |

Before the Court are Plaintiff's and Defendant's Motions for Summary Judgment, ECF Nos. 14 and 15. Plaintiff is represented by Chad Hatfield.

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

Defendant is represented by Jacob Phillips and Tim Durkin. The motions were considered without oral argument. Having considered the briefing and the applicable law, the Court grants Plaintiff's motion and denies Defendant's motion.

## Jurisdiction

Plaintiff filed an application for disability insurance benefits and supplemental social security income on January 26, 2018, alleging a disability onset date of May 15, 2013.[3] Plaintiffs' claims were initially denied on April 24, 2018, and again upon reconsideration on December 10, 2018. At Plaintiff's request, the ALJ held a hearing on January 2, 2020. On February 11, 2020, the ALJ issued an opinion affirming the denial of Plaintiff's claims for benefits.

Plaintiff requested review of the ALJ decision, which the Appeals Council denied on August 7, 2020. Plaintiff then filed a timely appeal with the United States District Court for the Eastern District of Washington on October 7, 2020. ECF No. 1. The matter is before this Court under 42 U.S.C. § 405(g).

## Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to

---

[3] Both Plaintiff's counsel and the ALJ state that Plaintiff's disability onset date was May 15, 2013. ECF No. 14 at 2; AR at 17. However, in Plaintiff's applications for disability and supplemental social security income, he states that his disability onset date was May 15, 2016. AR 215-222. But then, in Plaintiff's January 31, 2018 disability report, he states that he stopped working on May 15, 2013. *Id.* at 243. Thus, the Court assumes a disability onset date of May 15, 2013.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 2**

do his previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The steps are as follows:

(1) Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 404.1520(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Id*.; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1520(b). If he is not, the ALJ proceeds to step two.

(2) Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 404.1509. If the impairment is severe, the evaluation proceeds to the third step.

(3) Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step. Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 3**

(4) Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. § 404.1520(f). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

(5) Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. § 404.1520(g). The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Id*. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

## Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 4

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

### Facts

Plaintiff was approximately 32 years old at the time of his alleged disability onset date. Plaintiff has a high school education. He states that he has never been married, but lives with his children and girlfriend.

In Plaintiff's disability report dated January 31, 2018, he alleged that he had both physical and mental limitations. Specifically, he alleged that he had a neck injury; arthritis in the back; degenerative discs in the back; rod in the left femur; depression; memory loss; low movement in the right arm; whole body nerve pain; and bulging discs in the lower back. AR at 243. Plaintiff also stated that he suffered from migraines and head pain. *Id.* at 245.

### The ALJ's Findings

On February 11, 2020, the ALJ issued an opinion affirming denial of benefits. The ALJ concluded that Plaintiff had not been under a disability from May 15, 2013 to the date of the decision. *Id.* at 18.

At **step one**, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 15, 2013, the alleged disability onset date. *Id.* at 19.

At **step two**, the ALJ found that Plaintiff had the following severe impairments: obesity; degenerative disc disease of the lumbar and cervical spine, status-post cervical fusion; headaches; and right elbow impingement and synovitis, status-post two surgeries. *Id.* at 19-21.

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 5**

At **step three**, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals any Listing. *Id.* at 21-23.

The ALJ concluded that Plaintiff had a residual function capacity to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b). He could and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. He require[s] a sit/stand option every 30 minutes for 5 minutes while remaining at workstation. He was limited to no push/pull with the right upper extremity. He was limited to no climbing of ladders/ropes/scaffolds. He could occasionally climb ramps/stairs, occasionally stoop, rarely crouch but never kneel or crawl. He could occasionally reach overhead with his right dominant upper extremity and frequently handle/finger with the right dominant upper extremity. He must avoid concentrated exposure to extreme cold or heat, wetness, humidity and hazards such as dangerous moving machinery and unprotected heights. He also must avoid bright sunlight/flashing lights. For the period beginning November 15, 2016, the undersigned finds that the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). He is limited to lifting and/or carrying up to 10 pounds occasionally and 10 pounds frequently, standing and/or walking up to 2 hours in an 8-hour day, and sitting for 6 hours in an 8-hour day. He otherwise has continued with the same postural, manipulative and workplace limitations as described above.

*Id.* at 23.

At **step four**, the ALJ found that Plaintiff had no past relevant work. *Id.* at 30.

At **step five**, the ALJ found that Plaintiff was not disabled and that he was capable of performing work that exists in significant numbers in the national economy, including Cashier II, Production Assembler, Garment Sorter, Final Assembler, or Semi-conductor Bonder. *Id.* at 30-31.

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 6

**Issues for Review**

1.  Did the ALJ err in improperly evaluating the medical opinion evidence?

2.  Did the ALJ err by dismissing Plaintiff's severe impairments at step two?

3.  Did the ALJ err in failing to conduct an adequate analysis and failing to find Plaintiff disabled as meeting or equaling a Listing at step three?

4.  Did the ALJ err by rejecting Plaintiff's subjective complaints?

5.  Did the ALJ err in failing to conduct an adequate analysis at step five?

**Discussion**

1.  <u>Did the ALJ err in improperly evaluating the medical opinion evidence?</u>

Plaintiff argues that the ALJ failed to properly evaluate the opinions of (1) treating Physician Assistant Andrew Becker, PAC ("Mr. Becker"); and (2) Disability Determination Services state agency psychologists Dr. Matthew Comrie, PsyD ("Dr. Comrie") and Dr. Rebecca Alexander, PhD ("Dr. Alexander"). ECF No. 14 at 8-12.

First, Plaintiff argues that the ALJ was clearly erroneous in concluding that Mr. Becker's opinion lacked corroborating medical evidence from the record and did not cite sufficient evidence. *Id.* at 10. Plaintiff argues that Mr. Becker cited specific objective evidence from the medical record that supported his opinion and that therefore the ALJ improperly substituted his own opinion for that of Mr. Becker. *Id.* Second, Plaintiff argues that the ALJ improperly rejected Dr. Comrie's and Dr. Alexander's opinions regarding Plaintiff's mental limitations. *Id.* at 12. Plaintiff argues that the ALJ provided "the same boilerplate findings" in rejecting these doctors' opinions, but cited no evidence in the record to justify his rejection. *Id.*

In response, Defendant argues that the ALJ properly applied the new regulations governing Social Security disability determinations, which focus on whether a medical opinion is persuasive based on factors of consistency and supportability. ECF No. 15 at 5-8. First, for Mr. Becker, Defendant argues Mr.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 7

Becker's assessment that Plaintiff had never been able to reach with either arm was inconsistent with many other assessments finding that Plaintiff had adequate range of motion in his arms throughout the relevant period. *Id.* at 9. Mr. Becker also concluded that Plaintiff's limitations would prevent him from staying on-task for large portions of the day and would cause consistent absences—however, Defendant argues that many other treatment notes showed that Plaintiff's neurological and musculoskeletal functioning was only slightly limited. *Id.* at 9-10.

Second, for Drs. Alexander and Comrie, Defendant argues that there was substantial evidence supporting the ALJ's rejection of their opinions. For Dr. Alexander, Defendant argues that the ALJ reasonably rejected her opinion because it lacked an objective, clinical basis and because it was inconsistent with Plaintiff's other mental status examinations, which consistently showed him functioning largely within normal limits. *Id.* at 11-12. As for Dr. Comrie, Defendant argues that the ALJ reasonably rejected his opinion because it was inconsistent with the record. Dr. Comrie concluded that Plaintiff could not carry out detailed tasks on a consistent basis, understand and remember detailed instructions, or set goals independently—however, the ALJ noted that Plaintiff could care for his seven-year-old daughter, shop, manage finances, use computers, engage with friends in a bowling league, and go about his daily life without receiving counseling or treatment for his mental conditions. *Id.* at 13-14.

In reply, Plaintiff argues the ALJ committed harmful error by failing to provide sufficient reasoning for discounting the opinions of Mr. Becker, Dr. Alexander, and Dr. Comrie. ECF No. 16 at 2. Plaintiff states that the ALJ did not cite to any record evidence or make any specific findings when rejecting these opinions, even though all three medical sources cited to objective medical evidence to support their findings. *Id.* at 2-6.

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 8

*Legal Standard*

When evaluating the persuasiveness of medical opinions, the two most important factors for the ALJ to consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are support to his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). Consistency means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

In addition to supportability and consistency, the ALJ must also consider the medical source's relationship with the claimant; the length of the treatment relationship between the claimant and the medical source; the purpose of the treatment relationship; the extent of the treatment relationship; whether the medical source had an examining relationship with the claimant; the medical source's specialization; and other factors that might make a medical opinion more or less persuasive. *Id.* at § 404.1520c(c)(1)-(5).

Under the previous Social Security regulations governing claims filed prior to March 27, 2017, the ALJ was required to provide "clear and convincing" reasons for rejecting an uncontradicted medical opinion and "specific and legitimate reasons" for rejecting a contradicted medical opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The Ninth Circuit has not yet addressed the impact of the new regulations on the requirement that an ALJ provide "clear and convincing" reasons for rejecting an uncontradicted physician's opinion or "specific and legitimate reasons" for rejecting a contradicted physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 9

At least one district court has found that the new regulations do not alter these standards because they are "based on evidentiary principles in administrative law, and not on a hierarchy of opinions." *Patricia Jo I. v. Comm'r of Soc. Sec.*, No. 3:20-CV-5832-DWC, 2021 WL 1589522, at *3 (W.D. Wash. Apr. 23, 2021) (citing *Kathleen G. v. Comm. Soc. Sec.*, No. 2:20-cv-461-RSM (W.D. Wash. Nov. 10, 2020)). However, the same district court also noted that relevant Ninth Circuit precedent necessarily "linked the need for such reasons to the rationale underlying the hierarchy." *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *4 (W.D. Wash. Apr. 9, 2020).

For sake of consistency in this District, the Court adopts the rationale and holding articulated by Judge Mendoza on the issue in *Emilie K. v. Saul*, No. 2:20-CV-00079-SMJ, 2021 WL 864869, *3-4 (E.D. Wash. Mar. 8, 2021*), appeal docketed*, No. 21-35360 (9th Cir. May 10, 2021). In that case, Judge Mendoza held that the ALJ did not err in applying the new regulations over Ninth Circuit precedent, because the result did not contravene the Administrative Procedure Act's requirement that decisions include a statement of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." *Id.* at *4 (citing 5 U.S.C. § 557(c)(A)). Nevertheless, it is not clear that the Court's analysis in this matter would differ in any significant respect under the "clear and convincing" standard of *Lester v. Chater*.

### *Discussion*

Plaintiff argues that the ALJ failed to properly evaluate the opinions of Mr. Becker, Dr. Comrie, and Dr. Alexander. The Court will address each expert in turn.

### a. **Mr. Becker**

Mr. Becker, a Physician Assistant who examined Plaintiff on January 7, 2020, found that Plaintiff suffered from degenerative disc disease; lumbar radiculopathy; cervical radiculopathy; irritable bowel syndrome (IBS); migraine

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 10

headaches; cervical disc herniation; and chronic lumbar pack pain. AR at 1082. Mr. Becker based these diagnoses on Plaintiff's July 18, 2019 cervical MRI; February 28, 2018 thoracic MRI; and April 4, 2017 lumbar MRI. *Id.* Due to Plaintiff's limitations, Mr. Becker concluded that Plaintiff would have three debilitating headache days per week; would experience an increase in pain from almost any activity and thus would need to be absent from work often for recovery; could only perform sedentary work, which involved lifting/carrying a maximum of 10 pounds; could never do any reaching with the right and left upper extremities; and would likely be off-task and unproductive over 30% of the time, assuming a 40-hour workweek. *Id.* at 1083-84.

The ALJ agreed with Mr. Becker's assessment regarding Plaintiff's sedentary exertional limitations. *Id.* at 29. However, the ALJ found Mr. Becker's opinion regarding Plaintiff's expected time off-task and work absenteeism unpersuasive as it "lacks corroborating medical evidence from the record." *Id.* Specifically, the ALJ stated that—while Mr. Becker noted Plaintiff's diagnoses, imaging results, and his complaints of pain—Mr. Becker's opinion did "not cite sufficient evidence to support these extreme limitations" and therefore the ALJ concluded that "the record does not provide objective evidence to support the less-than-sedentary limitations opined." *Id.*

The Court finds that the ALJ failed to provide legally sufficient analysis on the supportability and consistency of Mr. Becker's opinion with the medical record prior to rejecting it. Earlier in his analysis, the ALJ cited to evidence in the medical record, including examinations finding that Plaintiff had good range of motion in his wrist, hand, and shoulder; levels of functioning within normal limits in his upper and lower extremities; and—though still a guarded range of motion and stiffness due to reproduced pain—generally no tenderness to palpation or pain in his cervical spine/neck. *Id.* at 27. Though the ALJ does not mention this evidence when discussing Mr. Becker's opinion, this cited evidence suggests that the ALJ

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 11**

believed that Mr. Becker's opinion regarding Plaintiff's limitations was contradicted. However, when actually rejecting Mr. Becker's opinion, the ALJ failed to cite legitimate reasons for doing so, as is required under the law. The ALJ merely concluded that Mr. Becker failed to cite to sufficient evidence to support his opinion and that the record did not provide objective evidence to support the severity of Plaintiff's alleged limitations. *Id.* at 29. However, the ALJ did not state why Mr. Becker relying on Plaintiff's diagnoses, imaging results, and complaints of pain were insufficient to support his opinion or why Drs. Fitterer's and Hander's 2018 assessments of the record were more accurate and reflective of Plaintiff's limitations than Mr. Becker's 2020 in-person examination. Thus, because the ALJ rejected Mr. Becker's opinion without explaining its purported lack of consistency or support with the record, the Court reverses and remands the case for further proceedings.

### b. **Dr. Comrie**

Dr. Comrie, a state agency psychological consultant who reviewed Plaintiff's medical records on April 23, 2018, found that Plaintiff had depressive, bipolar, and related disorders; anxiety and obsessive-compulsive disorders; and somatic symptom and related disorders, all of which Dr. Comrie classified as severe. AR at 95-96. Dr. Comrie also found that Plaintiff would have moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. *Id.* Specifically, Dr. Comrie stated that—while Plaintiff could consistently remember and understand standard procedures and regular work locations; carry out simple instructions; maintain concentration and persistence for up to two hours continuously; maintain adequate attendance; and complete a normal workday/workweek within normal tolerances of a competitive work environment—Plaintiff would be unable to consistently perform more detailed functions due to his mental limitations. *Id.* at 99-100.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 12

1    However, the ALJ rejected Dr. Comrie's opinion regarding the severity of

2 Plaintiff's mental limitations as unpersuasive. *Id.* at 29. The ALJ stated that Dr.

3 Comrie's opinion was unsupported by the overall medical record because there

4 was no evidence of mental health treatment or ongoing counseling, therapy, or

5 medications. *Id.* Furthermore, the ALJ stated that Dr. Comrie's opinion was

6 unsupported because of Plaintiff's reported activities and demonstrated

7 functioning, which included caring for his 7-year-old daughter, getting her ready

8 for school, driving, shopping, managing finances, using computers, and engaging

9 with friends in a bowling league. *Id.* The ALJ stated that these activities were

10 inconsistent with a finding of a severe mental impairment. *Id.*

11    The Court finds that the ALJ erred in rejecting Dr. Comrie's opinion. The

12 ALJ's rejection of Dr. Comrie's opinion was predicated on two main bases: (1)

13 Plaintiff's mental limitations were not as severe as he alleged because he was not

14 receiving mental health treatment and (2) Plaintiff was still able to engage in daily

15 activities. However, the ALJ's first basis is not supported by the medical record.

16 Dr. Comrie noted that, in January 2018, Plaintiff had been prescribed Cymbalta for

17 depression and chronic pain "with some benefit," even though Plaintiff had no

18 "formal psychiatric history." *Id.* at 96. In his review of Plaintiff's medical records,

19 Dr. Comrie also noted that, on January 29, 2018, Plaintiff had been diagnosed with

20 depression and was prescribed Duloxetine. *Id.* at 94.

21    As for the ALJ's second basis, the Ninth Circuit has instructed that "[t]he

22 Social Security Act does not require that claimants be utterly incapacitated to be

23 eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

24 Recognizing that "disability claimants should not be penalized for attempting to

25 lead normal lives in the face of their limitations," the Ninth Circuit has held that

26 "[o]nly if [a claimant's] level of activity were inconsistent with his claimed

27 limitations would those activities have any bearing on his credibility." *Reddick v.*

28 *Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Here, none of the ALJ's cited activities

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 13

are facially inconsistent with Plaintiff's alleged mental limitations. Thus, because the ALJ improperly rejected Dr. Comrie's opinion, the Court reverses and remands the case for further proceedings.

### c. **Dr. Alexander**

Dr. Alexander, a consultative examining psychologist who examined Plaintiff on April 16, 2018, found that Plaintiff had generalized anxiety disorder; persistent depressive disorder; rule out borderline intellectual functioning; rule out neurocognitive disorder; and somatic symptom disorder. AR at 724. Dr. Alexander also concluded that Plaintiff had mild to moderate limitations in remembering and processing simple instructions; interacting appropriately in the workplace and socially; and managing stress and hazards—however, she stated that Plaintiff had moderate to marked limitations in understanding and remembering complex multistage instructions and sustaining concentration and persistence. *Id.* at 725.

The ALJ rejected Dr. Alexander's opinion regarding Plaintiff's impairments as unpersuasive. *Id.* at 30. The ALJ proffered three reasons for rejecting Dr. Alexander's opinion: (1) Dr. Alexander did not have a treating relationship with Plaintiff—instead, she only had a one-time evaluation with him; (2) Dr. Alexander's conclusions were based solely on Plaintiff's subjective complaints, rather than on an objective, clinical basis; and (3) Dr. Alexander's conclusions were inconsistent with Plaintiff's other mental status screenings, which found him to be largely within normal limits.

The Court finds that the ALJ erred in rejecting Dr. Alexander's opinion on these bases. First, contrary to the ALJ's finding, Dr. Alexander did not solely base her conclusions on Plaintiff's subjective complaints. During her examination of Plaintiff, Dr. Alexander performed a mental status exam, which tested orientation, memory, information, calculations, abstract thinking, and judgment. *Id.* at 723. Partially based on the results of this exam, Dr. Alexander concluded that Plaintiff had problems with memory. *See id.* (finding that Plaintiff only remembered one of

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 14**

three objects after three minutes); *see also id.* at 724 ("[Plaintiff] was a poor historian during the exam in terms of dates/years and information."). The mental status exam also led Dr. Alexander to conclude that Plaintiff's "[r]ecent and immediate memory, fund of information, ability to calculate math problems, abstract thinking, and judgment are below the average range." *Id.* at 724.

Second, the mental status screenings the ALJ cited to in order to contradict Dr. Alexander's conclusions also objectively support that Plaintiff struggled with memory loss. For example, at Plaintiff's January 8, 2020 visit with Katherine King, a Physician Assistant with Providence Inland Neurosurgery and Spine, Ms. King noted that Plaintiff was "[p]ositive for depression and memory loss." *Id.* at 1086. Similarly, at Plaintiff's September 14, 2015 visit with Dr. David Gruber at Providence Inland Neurosurgery and Spine, Dr. Gruber marked "Yes" to indicate that Plaintiff experienced confusion and memory loss. *Id.* at 439. It is true that, on the next page, Dr. Gruber also indicated that Plaintiff had "[n]o impairment of attention, concentration, or short term memory." *Id.* at 440. However, rather than addressing this evidence, the ALJ merely stated that these exams showed that Plaintiff's mental status was largely within normal limits, which is not a complete or accurate characterization of the record. Thus, because the ALJ improperly rejected Dr. Alexander's opinion, the Court reverses and remands the case for further proceedings.

2. Did the ALJ err at step two in assessing Plaintiff's impairments?

Plaintiff argues that the ALJ erred by rejecting some of his alleged severe impairments—including myelomalacia; radiculopathy of the lumbar and cervical spine; generalized anxiety disorder; persistent depressive disorder; and somatic symptom disorder—as groundless. ECF No. 14 at 12-13. Plaintiff states that, when properly evaluated, these impairments significantly limit his ability to perform basic work activities. *Id.* at 13. Thus, Plaintiff argues that the Court should remand so that the ALJ can consider these impairments and perform a new evaluation. *Id.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 15**

In response, Defendant argues that the ALJ reasonably decided step two in Plaintiff's favor, while still accounting for whether Plaintiff's alleged severe impairments were credible. ECF No. 15 at 14. Moreover, Defendant argues that, when an ALJ decides step two in a claimant's favor, the claimant is not prejudiced from a step two finding and thus any alleged error is harmless. *Id.* Finally, Defendant argues that the ALJ did not err because he considered the effects of all of Plaintiff's impairments at later steps in the evaluation. *Id.* at 16.

In reply, Plaintiff argues that the ALJ's rejection of his alleged severe impairments was not harmless error because (1) the ALJ failed to consider the limitations from these impairments and (2) this rejection likely affected the outcome of the disability determination. ECF No. 16 at 6.

*Legal Standard*

The Ninth Circuit has stated that step two of the Social Security analysis is "merely a threshold determination meant to screen out week claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). However, when the ALJ is determining the claimant's residual function capacity, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (internal quotation and citation omitted). Thus, the Ninth Circuit has stated that the residual function capacity "*should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original).

An ALJ's decision not to list an impairment as severe at step two is harmless error if (1) the ALJ resolves step two in the claimant's favor (*i.e.*, finds that the claimant has severe impairments) and (2) the ALJ still considers all of the claimant's symptoms from both their severe and non-severe impairments when determining residual function capacity. *E.g.*, *Vivian v. Saul*, 780 F. App'x 526, 527 (9th Cir. 2019). However, an ALJ can commit harmful error if they omit a limitation from the list of severe impairments at step two and if they fail to account

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 16

for that limitation when determining the claimant's residual function capacity at step three. *Eitner v. Saul*, 835 F. App'x 932, 933 (9th Cir. 2021) ("The ALJ's omission of fibromyalgia from the list of severe impairments and discrediting of Claimant's testimony regarding the condition were not harmless errors because . . . the ALJ did not meaningfully consider the physical limitations of the impairment in the remainder of his analysis.").

*Discussion*

The Court finds that the ALJ erred in failing to take into account Plaintiff's mental limitations in determining his residual function capacity. At step two, the ALJ concluded that—though Plaintiff had "medically determinable mental impairments of depression, anxiety[,] and somatic symptom disorder"—these impairments caused only minimal limitations in his ability to perform basic work activities and therefore were non-severe. AR at 20. However, in determining Plaintiff's residual function capacity at step three, the ALJ did not analyze any symptoms stemming from Plaintiff's mental limitations, such as his difficulty with memory, concentration, focus, and understanding and ability to complete tasks. Instead, the ALJ merely stated "[f]or the reasons previously discussed, the undersigned finds that claimant's . . . mental conditions, including depression and anxiety, are non-severe impairments within the meaning of the regulations." *Id.* at 25. This does not constitute a "meaningful" consideration of Plaintiff's mental limitations.[4] Thus, the Court reverses and remands to the ALJ for further proceedings.

---

[4] At step two, the ALJ did state that "the undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity. *Id.* at 20. However, because the ALJ did not actually discuss any of Plaintiff's non-severe medically determinable impairments when determining his residual function

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 17**

3. <u>Did the ALJ err at step 3 by finding that Plaintiff's impairments did not meet or equal a Listing?</u>

Plaintiff argues that the ALJ erred at step 3 in five different ways: (1) failing to conduct an adequate analysis; (2) failing to properly consider Listing 1.04A for Plaintiff's degenerative spinal conditions; (3) failing to properly consider Listing 1.02B for Plaintiff's upper extremity impairments; (4) failing to properly consider Listing 11.02 for Plaintiff's migraine headaches; and (5) failing to find Plaintiff disabled. ECF No. 14 at 14. Specifically, Plaintiff argues that his medical record includes evidence that he meets the threshold requirements of multiple Listings and thus the ALJ's failure to consider this evidence or these Listings constitutes harmful error. *Id.* at 14-17.

In response, Defendant argues that there was substantial evidence supporting the ALJ's decision that Plaintiff was not *per se* disabled at step three. ECF No. 15 at 16. Specifically, Defendant argues that even Plaintiff's cited evidence does not support that Plaintiff met the specified Listings. *Id.* at 16-20.

In reply, Plaintiff argues that the ALJ merely made conclusory statements that Plaintiff did not meet Listing 1.04A, which constitutes a failure to conduct a reasonable evaluation of the objective medical evidence. ECF No. 16 at 7. Additionally, Plaintiff states that the ALJ erred in failing to even consider Listings 1.02B and 11.02, despite the record evidence and medical opinions supporting Plaintiff's impairments matching these Listings. *Id.* at 7-9.

*Legal Standard*

If a claimant has an impairment or combination of impairments that meets a condition outlined in the Listing of Impairments under 20 C.F.R. Pt. 404, the claimant is presumed disabled at step three. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th

_____

capacity, this conclusory statement also does not constitute "meaningful" consideration.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 18**

Cir. 2001). In determining whether a claimant's impairments meet a Listing, the ALJ must evaluate relevant evidence. *Id.* An ALJ cannot conclude that a claimant fails to meet a Listing simply by issuing a "boilerplate finding." *Id.*

*Discussion*

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met one of the listings under 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 21-22. In reaching this conclusion, the ALJ stated that he considered Section 1.00 for Musculoskeletal System Impairments and 11.00 for Neurological System Impairments—specifically Listing 1.04 for disorders of the spine, Listing 1.02B for major dysfunction of a peripheral joint, and Listings 11.02 and 11.04 for migraines. *Id.* at 22-23. The Court will address each of these Listings in turn.

     a. **Listing 1.04A**

In order to for a claimant to meet Listing 1.04A, the ALJ must find that the claimant:

(1)    Has a disorder of the spine, which includes, *inter alia*, spinal stenosis, osteoarthritis, and degenerative disc disease;

(2)    The disorder results in compromise of a nerve root or the spinal cord; and

(3)    The disorder is accompanied by one of the following:

    (a)    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and—if there is involvement of the lower back—positive straight-leg raising test;

    (b)    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 19

>   (c)    Lumbar spinal stenosis resulting in pseudoclaudication,
>   established by findings on appropriate medically acceptable
>   imaging, manifested by chronic nonradicular pain and
>   weakness, and resulting in inability to ambulate effectively, as
>   defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A (effective November 26, 2019 to February 23, 2020).

Listing 1.00B2b defines inability to ambulate effectively as having insufficient lower extremity function to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities. *Id.* § 1.00B2b.

The ALJ found that Plaintiff did not meet Listing 1.04A. Specifically, the ALJ stated that "there is no objective medical evidence that claimant's degenerative disc disease with chronic neck and/or low back pain has resulted in nerve root compromise with motor loss . . . accompanied by sensory or reflex loss, or inability to ambulate effectively." AR at 22. Though the ALJ conceded that Plaintiff's examinations showed chronic back and neck pain/tenderness with some diminished right upper extremity strength and antalgic gait/limp at times, the ALJ found that Plaintiff did not demonstrate focal motor, sensory, or reflex deficits or any inability to ambulate effectively. *Id.*

The Court finds that the ALJ erred by failing to conduct a reasonable evaluation of the evidence in determining whether Plaintiff met Listing 1.04A. First, the ALJ already concluded that Plaintiff had multilevel degenerative disc disease most prominent at C4-5 and C5-6 levels including vertebral disc spurring causing mild-moderate foraminal stenosis, as well as lumbar spine degenerative disc disease with significant osteoarthritis at both L4-5 and L5-S1 levels and bilateral foraminal narrowing. *Id.* at 322-23. Second, there is evidence in the medical record of nerve root encroachment. In Plaintiff's March 4, 2017 MRI

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 20**

report, Dr. Melvyn Feliciano noted that Plaintiff had "[s]able moderate bilateral exiting L5 nerve root encroachment with mild L5-S1 posterior facet arthropathy." *Id.* at 499-500. Finally, even after Plaintiff's surgery, there is evidence in the medical record of neuroanatomic distribution of pain, *id.* at 627, 712; limitation of motion of the spine, *id.* 629; and motor loss accompanied by sensory or reflex loss, *id.* at 712-14. However, because the ALJ did not consider any of this evidence in his analysis, the Court reverses and remands to the ALJ for further proceedings.

### b. **Listing 1.02B**

In order to for a claimant to meet Listing 1.02B, the ALJ must find that the claimant:

(1)    Has major dysfunction of a joint due to any cause;

(2)    The dysfunction is characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint, and findings on appropriate medically acceptable imaging of joint space narrow, bony destruction, or ankylosis of the affected joint; and

(3)    The dysfunction is accompanied by one of the following:

(a)    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

(b)    Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02B (effective November 26, 2019 to February 23, 2020).

Listing 1.00B2c defines inability to perform fine and gross movements effectively as having an extreme loss of function of both upper extremities that interferes very seriously with the ability to independently initiate, sustain, or

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 21**

complete activities (*e.g.*, prepare a simple meal, feed oneself, or take care of personal hygiene). *Id.* § 1.00B2c.

The ALJ found that Plaintiff did not meet Listing 1.02B. Specifically, the ALJ stated that "there is no evidence claimant is unable to perform fine and gross movements (handling/fingering) effectively." AR at 22. The ALJ noted that Plaintiff was able to attend to his personal hygiene, feed himself, perform chores, drive, and even participate in a bowling league twice a week and that Plaintiff's neuromuscular exams did not show significant focal motor strength or sensory deficits. *Id.*

The Court finds that the ALJ erred by failing to conduct a reasonable evaluation of the evidence in determining whether Plaintiff met Listing 1.02B. First, the ALJ already concluded that Plaintiff had a severe impairment of right elbow impingement and synovitis, status-post two surgeries—the first surgery was to remove an osteophyte/loose body and the second surgery was to address anterior capsular release and posterior decompression with removal of loose body. *Id.* at 19, 26-27. Moreover, there is evidence in the medical record showing that Plaintiff was unable to perform fine and gross movements effectively. During a July 25, 2018 exam at Lewiston Orthopaedics, Plaintiff stated that daily activities, such as exercise, lifting, reaching above his head, and reaching behind his back, caused elbow pain. *Id.* at 726. Based on this exam, Dr. Steven Boyea concluded that Plaintiff had limited painful active range of motion on his right side and that he was experiencing worsening degenerative arthritis of his right elbow with 25-degree flexion contracture. *Id.* at 727-29. Similarly, during his January 8, 2020 visit with Providence Inland Neurosurgery and Spine, Plaintiff stated that he had been losing feeling in his elbow and small fingers for about a year. *Id.* at 1085. However, because the ALJ did not consider any of this evidence in his analysis, the Court reverses and remands to the ALJ for further proceedings.

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 22**

### c. Listing 11.02

There is no medical listing for headaches or migraines specifically. However, ALJs are instructed to use Listing 11.02, which is the most closely analogous listing for migraines. POMS DI 24505.015(B)(7)(b); HALLEX DI 24505.015(B)(7)(B) (example 2); *see also Amie H. v. Kijakazi*, No. 2:20-CV-00252-MKD, 2021 WL 3044227, at *7 (E.D. Wash. July 19, 2021). Listing 11.02 requires that the claimant experience severe headaches or migraines at least once a week for three consecutive months, despite adherence to prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §11.02 (effective March 14, 2018 to April 1, 2021). Listing 11.02 also requires that migraine headaches be documented by detailed descriptions of a typical migraine headache, including all associated phenomena. *Id.*

The ALJ found that Plaintiff did not meet Listing 11.02. Specifically, the ALJ found that "the medical evidence does not establish that claimant has had the equivalent of recurrent seizures . . . resulting in effective speech or communication, disorganization of motor function in two extremities resulting in extreme limitation, or marked limitations in any of the areas of functioning outlined in the listing." AR at 22. Additionally, the ALJ reiterated that Plaintiff's neurological exams consistently demonstrated no focal neurologic/motor or sensory deficits, no sustained disorganization of motor function, or marked limitations as outlined in the listing. *Id.* at 22-23.

The Court finds that the ALJ erred by failing to conduct a reasonable evaluation of the evidence in determining whether Plaintiff met Listing 11.02. There is evidence in the medical record showing that Plaintiff began experiencing chronic headaches in 2013, for which he provided detailed descriptions to his medical providers. *Id.* at 433. For example, at a November 6, 2014 visit to the Rockwood Neurology Center, Plaintiff stated that the headaches began a year ago, never fell below a 2/10 baseline pain level, and would increase to a 9/10 pain level

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 23

"several times a week." *Id.* Plaintiff stated that these headaches would sometimes manifest with associated photophobia and phonophobia, but usually not nausea. *Id.* Plaintiff continued to experience and seek medical treatment for his migraines up until 2019. On January 31, 2018, Plaintiff saw Dr. Jean Thomas at St. Joseph Neurology, where he reported migraines that "never resolve." *Id.* at 731. Plaintiff stated that his migraines worsened if he concentrated and that they caused his speech to stutter. *Id.* He also stated that, during a very severe migraine, he experienced pressure all throughout his head, but rarely had double vision. *Id.* Finally, Plaintiff stated that he experienced nausea, but was not sure if it was due to the headaches. *Id.*

There is also evidence that Plaintiff tried various forms of treatment, all to no avail. For example, after the January 31, 2018 visit, Dr. Thomas concluded that Plaintiff had "headaches that he says have not responded to several medications." *Id.* at 736. Additionally, in 2018, Plaintiff reported that he had successfully used Topamax, Amitriptyline, and Duloxetine to help manage his migraines, but had to stop taking these medications due to side effects. *Id.* at 738, 742, 751. Finally, in April 2019, Plaintiff reported that his headaches returned to occurring every day. *Id.* at 803. However, because the ALJ did not consider any of this evidence in his analysis, the Court reverses and remands to the ALJ for further proceedings.

4. <u>Did the ALJ err by improperly discrediting Plaintiff's subjective complaints about his symptoms?</u>

Plaintiff argues that the ALJ improperly discounted his subjective complaints about the nature and intensity of his limitations. ECF No. 14 at 17-18. First, Plaintiff argues that the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints about his migraines, but instead merely made a conclusory statement that Plaintiff's symptom complaints were not supported by imaging of his brain. *Id.* Second, Plaintiff argues that the ALJ failed to even consider some of Plaintiff's complaints—including

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 24

myelomalacia; compression of his cervical spinal cord; encroachment of the nerve roots of his lumbar spine; and a history of right elbow surgeries—even though these complaints were supported by objective evidence. *Id.* at 19-20. Finally, Plaintiff states that he testified that he was unable to maintain regular employment due to, *inter alia*, his migraines, severe pain symptoms, limited use of upper extremities, difficulties ambulating, and the need to recline during the day. *Id.* at 20. However, Plaintiff argues that the ALJ failed to (1) identify what part of Plaintiff's testimony was not credible and (2) provide clear and convincing reasons for finding Plaintiff not credible—instead, the ALJ merely stated that "the overall medical record . . . does not support that claimant's cervical spine/neck, or other impairments, would preclude him from work entirely". *Id.*

In response, Defendant argues that there was substantial evidence supporting the ALJ's rejection of the alleged severity of Plaintiff's impairments. ECF No. 15 at 2. Specifically, Defendant argues that the ALJ reasonably relied on evidence from the medical record, showing that (1) Plaintiff received treatments that improved his elbow/shoulder/spine impairments and (2) Plaintiff only received conservative treatment. *Id.* at 2-5.

In reply, Plaintiff argues that Defendant's arguments mischaracterize the evidence. For example, Plaintiff states that, despite Defendant's argument that Plaintiff received conservative treatment, Defendant also acknowledges that Plaintiff underwent three surgeries and was prescribed hydrocodone, tramadol, and migraine medications, all of which are powerful opioid narcotics only available through prescription. ECF No. 16 at 10. Moreover, Plaintiff states that the medical record shows that any symptom relief that he received from his treatments was temporary, which the ALJ failed to address when discounting Plaintiff's subjective testimony. *Id.*

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 25

*Legal Standard*

The ALJ is responsible for making credibility determinations. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1036). In this analysis, the claimant is not required to show "that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of that symptom," *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). In addition, he need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id*.

Once a claimant has produced evidence of an impairment, the ALJ may not discredit testimony regarding symptoms simply by asserting that they are unsupported by objective evidence. *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006). Rather, the ALJ must provide specific, cogent reasons to find that the claimant is not credible. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The Court will affirm the ALJ's reasoning so long as it is clear and convincing. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

*Discussion*

Here, the ALJ concluded that Plaintiff suffered from the following severe impairments: obesity; degenerative disc disease of lumbar and cervical spine, status-post cervical fusion; headaches; right elbow impingement and synovitis,

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 26

status post-two surgeries. AR at 19.[5] However, the ALJ concluded "the overall medical record . . . does not support that claimant's cervical spine/neck, or other impairments, would preclude him from work entirely" and that a "limitation to light and/or sedentary exertional level work accounts for the claimant's impairments." *Id.* at 27-28.

Defendant argues that there was substantial evidence supporting the ALJ's decision to reject Plaintiff's symptom testimony because the objective medical evidence did not support the degree of severity Plaintiff alleged. For example, first, for Plaintiff's lumbar spine degenerative disc disease, the ALJ noted that imaging of Plaintiff's lumbar spine in both May 2015 and January 2019 indicated only mild degenerative changes. *Id.* at 25. The ALJ also noted that—though the medical record indicated that Plaintiff experienced chronic low back/neck pain, a limping gait, and decreased strength in his right upper extremities at times—Plaintiff's physical exams from 2014 to 2015 otherwise indicated generally normal muscle strength and range of function. *Id.* at 25-26.

Second, for Plaintiff's headaches, the ALJ stated that Plaintiff's MRIs from 2014-2016 ruled out a lesion as the cause of his migraines and doctors had instead told Plaintiff that his migraines were caused either from overuse of the hydrocodone or from his neck/cervical spine issues. *Id.* at 26. Additionally, the ALJ noted that Plaintiff's neurology evaluations from 2014-2015 indicated normal neuromuscular findings. *Id.*

Third, for Plaintiff's right elbow impairment, the ALJ stated that—though Plaintiff first received right elbow surgery in November 2013—other examinations

---

[5] The ALJ also concluded that Plaintiff had medically determinable impairments of gastro esophageal reflux disease (GERD); Barrett's esophagitis; depression; anxiety; and somatic symptom disorder—however, the ALJ concluded that these impairments were non-severe. *Id.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 27

from 2013-2014 showed that his elbow functioning was within normal limits and that Plaintiff indicated no complaints of elbow pain. *Id.* Additionally, during a December 2014 exam, the ALJ noted that—though Plaintiff reported that he could not lift anything with his right arm without pain in his elbow—the exam showed that he still had normal range of motion/strength and an MRI of his right elbow showed only mild severity. *Id.* Finally, after Plaintiff underwent a second right elbow surgery in June 2015, the ALJ pointed out that Plaintiff's post-operative evaluations from 2015-2018 indicated good recovery for the elbow and that it was functioning generally within normal limits. *Id.* at 26-27.

Finally, for Plaintiff's chronic neck pain, the ALJ noted that—after Plaintiff underwent surgery for cervical spine fusion in June 2017—Plaintiff's physical examinations after the surgery showed a largely normal range of motion and indicated no pain, despite Plaintiff's allegations that he still experienced neck/upper extremity pain. *Id.* at 27.

Defendant also argues that Plaintiff only received conservative treatment for his alleged impairments, which supported the ALJ's decision to reject his symptom testimony. For example, for Plaintiff's right elbow impairment, the ALJ cited to the fact that—after Plaintiff's June 2015 surgery—the surgeon simply advised Plaintiff to "continue [] doing stretching exercises for his elbow at home daily" and noted that Plaintiff could progress with activities as tolerated. *Id.* Similarly, for Plaintiff's chronic neck pain, the ALJ stated that—after Plaintiff's June 2017 surgery—Plaintiff's doctor stated that "there is not pathology that would suggest the need for further surgery" and simply recommended that Plaintiff engage in regular physical therapy and home stretching. *Id.* (internal citations omitted). Finally, Defendant argues that the fact that Plaintiff continued to take hydrocodone for his degenerative disc disease, despite recommendations that he transition off the hydrocodone to another medication that would not interfere with his migraine treatment, shows that he only needed or pursued conservative treatment. ECF No.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 28**

15 at 5. Specifically, Defendant argues that "[h]ad Plaintiff experienced truly debilitating pain due to migraine and back conditions, one could reasonably expect that he would have pursued alternative treatment options." *Id.*

The Court finds that the ALJ erred in his credibility determination and improperly discounted Plaintiff's testimony regarding the severity of his limitations.

First, the Court finds that the ALJ's conclusion that the objective medical record did not support Plaintiff's alleged degree of severity is not supported by substantial evidence. It is true that there is evidence in the record, showing that Plaintiff experienced little to no pain in the months immediately following his June 2017 cervical spine fusion surgery. *Id.* at 548, 552, 600. However, the overall record shows that Plaintiff's pain returned, and that Plaintiff continued to experience headaches and limitations in his neck, elbow, and back/spine up until January 2020, the latest date of Plaintiff's submitted medical records. AR at 621, 627, 713-14, 726-29, 747, 1066, 1085.

Second, the Court finds that the ALJ's conclusion that Plaintiff's symptom testimony was not credible because he was only receiving conservative treatment for his impairments is not supported by substantial evidence. First, as Plaintiff points out, the ALJ acknowledged that Plaintiff (1) underwent three surgeries for his elbow and cervical spine fusion and (2) was prescribed hydrocodone and tramadol for his pain and migraines, neither of which constitute "conservative treatment" under any common-sense understanding of the term. ECF No. 16 at 10. Second, though the ALJ states that Plaintiff only needed conservative treatment after his surgeries, such as physical therapy and home stretching, this is not supported by the medical record. For example, after Plaintiff reported that his pain returned after his June 2015 elbow surgery, Dr. Steven Boyea, an orthopedist, told Plaintiff on July 25, 2018, that doing a surgical open arthrotomy with loose body removal and anterior capsular release might help with some of his symptoms, but

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 29

that eventually Plaintiff would need to have resurfacing done in the future as his degenerative arthritis progressed. AR at 867. On August 3, 2018, Plaintiff also told his medical provider that an orthopedist had told him that he would need an elbow replacement, but that he was too young to do so, and that the orthopedist had no other recommendations at that time. *Id.* at 738.

The record also shows that Plaintiff received both lumbar epidural steroid injections and medial nerve branch blocks to try and alleviate his pain. However, during Plaintiff's May 2, 2019 visit to the Pain Clinic, Plaintiff stated that neither of these methods provided him significant relief from the pain. *Id.* at 1066. Thus, Wesley Wolcott, CRNA, expressed to Plaintiff that "there was not any other injection" that the hospital could do that would help and that Plaintiff was not "a good candidate for RFA of the medial nerve branch." *Id.*

Finally, it seems that—in the fall of 2019—Plaintiff tried switching to Baclofen and Tizandine, which led to a significant improvement in his pain management. *Id.* at 783 (while taking Baclofen, Plaintiff reported "a lot less muscle pain," "markedly improved function," and that he was "able to do chores around the house and had energy to do things that he has not had energy to do in quite a while"), 789 (while taking Tizandine, Plaintiff reported that it was also helping with his back pain, which Baclofen did not). However, on October 17, 2019, Plaintiff reported that he had stopped taking Tizandine 4 mg, even though it helped with his pain management, because it caused whole-body swelling, including difficulty breathing. *Id.* at 781. But Plaintiff said that he was willing to endure swelling if the Tizandine 2 mg would "help with the pain as much as they did the first time." *Id.* Thus, the fact that Plaintiff stated that he was willing to endure whole-body swelling in order to receive pain relief supports his assertion that mere physical therapy and home stretching were not alleviating his pain symptoms. Because the ALJ erred in rejecting Plaintiff's subjective testimony, the Court reverses and remands to the ALJ for further proceedings.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 30

5. <u>Did the ALJ err in his analysis at step five?</u>

Plaintiff argues that the vocational testimony the ALJ relied on at step five was lacking in evidentiary value. ECF No. 14 at 20. Specifically, Plaintiff states that the testimony the ALJ relied on was provided in response to an incomplete hypothetical. However, when the vocational expert was presented with hypotheticals that reflected all of Plaintiff's limitations, the expert concluded that these limitations would preclude competitive employment. *Id.* at 20-21.

In response, Defendant argues that Plaintiff is merely repeating his claim that the ALJ improperly weighed evidence—however, Defendant states that Plaintiff fails to show any basis to remand because the medical record did not support Plaintiff's alleged limitations. ECF No. 15 at 20-21. Additionally, Defendant states that Plaintiff cannot establish error just because "the ALJ did not account for Plaintiff's preferred limitations." *Id.* at 20.

In reply, Plaintiff reiterates his argument that, when the vocational expert was presented with Plaintiff's improperly rejected limitations, the expert concluded that these limitations would preclude employment. ECF No. 16 at 10-11.

Because the Court has already found sufficient grounds to reverse and remand this matter to the ALJ, the Court finds it unnecessary to reach these arguments.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED.**

2.    Defendant's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

3.    The decision of the Commissioner is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order. On remand, the ALJ shall reconsider (1) the opinions of Mr. Becker and Drs. Comrie and Alexander; (2) symptoms stemming from Plaintiff's impairments that the ALJ

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 31

deemed non-severe; (3) whether Plaintiff's impairments met Listings 1.04A, 1.02B, and 11.02; and (4) Plaintiff's testimony regarding the severity of his limitations. This remand is made pursuant to sentence four of 42 U.S.C. § 405(g).

4.    The District Court Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

5.    Plaintiff is permitted to request reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 7th day of September 2021.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 32